**Tommy MONSOUR, Plaintiff,**

v.

**DELCO REMY, PLANT 25, MERIDIAN, MISSISSIPPI and James Brown, Jr., Employee of Delco Remy, Plant 25, Meridian, Mississippi and Individually, Defendants.**

Civ. A. No. 4:94–CV–7(L)(N).

United States District Court,
S.D. Mississippi,
Eastern Division.

April 11, 1994.

Joseph A. Kieronski, Jr., Self & Jacob, Meridian, MS, for plaintiff.

William I. Gault, Jr., William T. Siler, Jr., Phelps Dunbar, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiff Tommy Monsour, an employee of Delco Remy, Plant 25, in Meridian, Mississippi (Delco), commenced this action in state court against Delco and a co-worker, James Brown, Jr., demanding damages for defamatory statements which plaintiff alleged defendants had published about him. Defendants removed the action to this court pursuant to 28 U.S.C. § 1441, contending that plaintiff's cause of action is preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Plaintiff, arguing that this court lacks jurisdiction, has moved the court for an order remanding this case to state court. The court has considered the memoranda of authorities, together with attachments, submitted by the parties and concludes that the motion to remand should be granted.

Plaintiff is an employee of Delco, and a member of the bargaining unit covered by a collective bargaining agreement between Delco and the United Auto Workers Union. According to the allegations of his complaint, in 1993, an implementation meeting was held at Delco's plant for the purpose of discussing and addressing waste management and enhancement of the plant's production.[1] A number of reports, including a document entitled "Armature Assembling and Machining Waste Identification List," and another entitled "Other Brainstorming Ideas," were generated as a result of that meeting and were disseminated throughout the plant. Plaintiff's name appeared as item number 26 on the "Waste Identification List," and the list of "Other Brainstorming Ideas" included the

---

1. The court is advised that the meeting was attended by certain Delco employees and a man- agement person acting as a "facilitator."

comment, "Grace, take care of Tommy."[2] The inclusion of plaintiff's name and reference to plaintiff in these documents forms the basis of plaintiff's defamation claim. He alleges that the publication of his name in these reports was false and defamatory, and that as a consequence of their publication, he has been forced to endure "the jeering and snickering remarks of his fellow employees" which has caused him extensive emotional pain and anguish.

In their notice of removal, defendants asserted that "[p]laintiff's state law claims are pre-empted by 29 U.S.C. § 185 in that they are subject to the grievance procedures set forth in the collective bargaining agreement between [Delco] and the United Auto Workers' Union." And in opposition to plaintiff's motion to remand, defendants argue, citing *Strachan v. Union Oil Co.*, 768 F.2d 703, 706–07 (5th Cir.1985), that since plaintiff's allegations challenge "work connected and collective bargaining connected actions by the company," there is "no room for any independent tort claim." Plaintiff does not dispute that state law causes of action which in substance charge a breach of a collective bargaining agreement or which require interpretation of the terms of a labor contract are preempted. He argues, though, that the claim herein asserted is wholly independent of any provision of the collective bargaining agreement and is therefore not preempted.

In *Allis–Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court enunciated the test for § 301 preemption of a tort claim as whether the tort "confers nonnegotiable state-law rights on employers and employees independent of any established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912. The Court made it clear that "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by § 301...." *Id.* at 211, 105 S.Ct. at 1911. However,

> when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law.

*Id.* at 220, 105 S.Ct. at 1916 (citations omitted).

Applying this analysis, numerous cases have held defamation and similar claims asserted by employees preempted by the LMRA. But that has typically occurred where the nature of the employees' claims challenged their employers' conduct in connection with disciplinary actions, or where the defamation was alleged to have occurred in the course of grievance and arbitration proceedings. *See, e.g., Merchant v. Communication Workers of America*, No. 93–2394, 1993 WL 475480 (E.D.La. Nov. 4, 1993) (defamation claim against union agent who represented plaintiff in grievance proceeding for agent's having advised union vice-president's administrative assistant of terms of grievance settlement preempted since terms of collective bargaining agreement were required to be interpreted to determine if agent's actions related to his duties for union as prescribed by the agreement); *Crawford v. TRW, Inc.*, 815 F.Supp. 1028 (E.D.Mich.1993) (LMRA completely preempted union official's defamation and infliction of emotional distress claims based on statements contained in posted notice detailing settlement of employee's unfair labor practice charge); *Chube v. Exxon Chem. Americas*, 760 F.Supp. 557 (M.D.La.1991) (employee's claims for intentional infliction of emotional distress and defamation arose out of alleged wrongful termination and required interpretation of terms of collective bargaining agreement and were thus preempted by LMRA); *Barbe v. Great Atlantic & Pacific Tea Co., Inc.*, 722 F.Supp. 1257 (D.Md.1989) (employee's defamation and intentional infliction of emotional distress claims against employer based on letter from employer to union accusing employee of falsifying company documents required interpretation of collective bargaining agreement which provided for termination for "just cause" including "dishonesty" and thus were

---

2. Grace is plaintiff's supervisor.

preempted by LMRA); *Sewell v. Genstar Gypsum Prods. Co.*, 699 F.Supp. 1443 (D.Nev.1988) (employee's claim of emotional distress premised on employer's alleged outrageous conduct relating to discharge preempted where employee failed to show that acts alleged to have caused emotional distress arose independent of employment conditions governed by collective bargaining agreement); *Durrette v. UGI Corp.*, 674 F.Supp. 1139 (M.D.Pa.1987) (claims for defamation and infliction of emotional distress challenging employer's having accused plaintiff of too many unexcused absences were intertwined with circumstances surrounding employee's termination and thus preempted by LMRA since discharge was governed by collective bargaining agreement); *Peffley v. Durakool, Inc.*, 669 F.Supp. 1453 (N.D.Ind. 1987) (employee's charge that employer defamed her in termination letter by accusing her of dishonesty preempted by LMRA; claim was inextricably intertwined with collective bargaining agreement because it implicated same analysis of facts as would inquiry under "just cause" provisions of agreement and required interpretation of term "dishonesty" which provided ground for termination under agreement); *Childers v. Chesapeake and Potomac Telephone Co.*, 670 F.Supp. 624 (D.Md.1987) (employee's state law claim of intentional infliction of emotional distress resulting from alleged unfair and retaliatory discharge preempted); *Hull v. Central Transport, Inc.*, 628 F.Supp. 784 (N.D.Ind.1986) (defamation claim based on statements made in grievance and arbitration process preempted by LMRA; claim based on comments of employer's official to police detective and state employment security commission not preempted); *Gillis v. Reynolds*, No. CV 84–HM–5319–NW, 1986 WL 15711 (N.D.Ala. Jan. 27, 1986) (employee's claim that employer libeled and slandered him by suspending him and communicating to union representatives and local law enforcement authorities that he was suspected in connection with arson preempted since employer was acting within the rights given it under collective bargaining agreement in suspending him pending further investigation); *Gregory v. Simon Bros., Inc.*, 640 F.Supp. 1252 (N.D.Ind.1986) (defamation

claim of employee preempted by LMRA; alleged defamatory statements were made as direct result of procedures required by collective bargaining agreement and resolution of case would require definition and interpretation of scope of terms of agreement); *Seid v. Pacific Bell, Inc.*, 635 F.Supp. 906 (S.D.Calif.1985) (alleged torts of negligence, defamation and intentional infliction of emotional distress which arose out of investigation proceedings leading to discharge covered by collective bargaining agreement's grievance and arbitration mechanism and therefore preempted); *Green v. Hughes Aircraft Co.*, 630 F.Supp. 423 (S.D.Calif.1985) (defamation action based on employer's having accused employee of theft of sandwich from company cafeteria in incident report and subsequent investigation preempted since discipline of employees was governed by collective bargaining agreement); *cf. Cole v. Pathmark of Fairlawn*, 672 F.Supp. 796 (D.N.J. 1987) (employee's discharge claim preempted by LMRA but claims for false arrest and malicious prosecution stemming from employee's arrest for shoplifting from employer not preempted; employee's injuries resulted not from discharge but from investigation and arrest on theft charges). In all cases where claims were ruled preempted, the claims arose either directly out of conduct relating to the grievance and arbitration procedure or questions were presented whether an employer's conduct was in accordance with its rights and obligations under the collective bargaining agreement.

A similar result was reached in two Fifth Circuit cases, *Bagby v. General Motors Corp.*, 976 F.2d 919 (5th Cir.1992), and *Strachan v. Union Oil Co.*, 768 F.2d 703 (5th Cir.1985), upon which defendants rely heavily to support their preemption argument. In the first of these cases, *Strachan*, two employees, one of whom was suspected of drug use while on duty, and the other who was suspected of drug use or of mental problems, were temporarily suspended, but subsequently exonerated and returned to work. Both employees filed grievances under the collective bargaining agreement, as they were clearly entitled to do. However, they also filed suit challenging actions taken by their employer in the course of suspending them,

including the employer's allegedly defamatory accusations of drug use which formed the basis of the suspensions. The Fifth Circuit concluded that the plaintiffs' tort claims were preempted by § 301 of the LMRA, stating, "[t]he law is completely clear that employees may not resort to state tort or contract claims in substitution for their rights under the grievance procedure in the collective bargaining agreement." *Id.* at 704. The court explained:

> In simple terms each of these employees was suspected of violating the collective agreement in a way which would subject them to discipline by the company.... Both were suspended during the investigation. The investigations were negative, and they were exonerated and returned to full duty. This routine procedure occurs thousands of times every year under collective bargaining agreements throughout the United States. *No matter in what glamorous garb it is dressed, the basic thrust of the appellants' claim is that a suspension and investigation for possible disciplinary action itself constitutes a tort under state law.*

> \* \* \* \* \* \*

> [The] various tort claims by the appellants demonstrate clearly an attempt to create major state court claims out of matters which are all part of a company claim of right under a collective bargaining agreement, and the employee's right to challenge such claims through grievance procedure ending in binding arbitration. To hold otherwise in this case would subject thousands of grievance procedures *involving disciplinary investigations and disciplinary actions* including such matters as careless destruction of production, chronic tardiness, drinking on duty, insubordination, to lawsuits asserting state court claims. The conclusion that such claims are preempted by the [LMRA] reveals the wisdom and necessity of the established legal principle. Otherwise, the critically important aspect of collective bargaining which is involved in the establishment of the grievance procedure to protest *breaches of labor contracts* would be destroyed.

*Strachan,* 768 F.2d at 704, 705 (emphasis supplied).

In *Bagby,* as in *Strachan,* the plaintiff, an employee and member of a collective bargaining unit, was temporarily suspended from employment after it was learned that a piece of the employer's equipment had been pawned and the pawn ticket reflected Bagby's name and address. Despite his denial of wrongdoing upon being confronted with this information, Bagby was suspended pending the outcome of an investigation into the matter, and was escorted out of the plant by a security guard. A week later, after the investigation was completed, Bagby was instructed to return to work and was paid wages for the period of the suspension. The employer took no further action.

Bagby did not file a grievance concerning the matter but instead filed suit in state court alleging state law claims relating to his temporary suspension in which he contended that GM had defamed him and intentionally caused him emotional distress by suspending him and having him escorted from the factory. After the case was removed to federal court by GM, the district court dismissed, finding that Bagby's claims were preempted by the LMRA. The court further dismissed the defamation claim because of a lack of proof that GM's actions involved malice. *Bagby,* 976 F.2d at 920. The Fifth Circuit affirmed. Bagby's complaint was, in essence, that actions which were "unquestionably taken in accordance with provisions of the CBA," *id.* at 921–22, i.e., the suspension and notice thereof, were nonetheless tortious. Citing *Strachan,* the court held that "[w]hen the charged violations are clearly within the terms of the CBA and no grievance had been filed, the state law claims are preempted by the LMRA." *Id.* at 921.

In the case *sub judice,* defendants argue that since the conduct of which plaintiff complains occurred in the workplace, plaintiff's sole avenue of redress was through compliance with the grievance and arbitration provisions of the collective bargaining agreement, and under the authority of *Bagby* and *Strachan,* his claim is preempted by the LMRA and must be dismissed. Apparently it is defendants' position that the LMRA

operates to preempt any tort action, so long as the cause of action bears any relation to the workplace or to the collective bargaining agreement and occurs within the confines of the employment relationship. But in the court's opinion, the reach of the LMRA preemption falls short of the present dispute.

■ Other than the fact that the plaintiff here, like the plaintiffs in *Bagby* and *Strachan*, has alleged a claim of defamation, this case bears little factual resemblance to either *Bagby* or *Strachan*. Those cases involved direct challenges by employees to their employers' right to conduct disciplinary investigations and take disciplinary actions against employees and hence directly involved the rights of the parties under the collective bargaining agreement. Nothing of the sort is presented in the case at bar. Plaintiff was not threatened with any form of disciplinary action. And his complaint cannot be construed, either in form or in substance, as alleging a violation of any provision of the collective bargaining agreement. Nor does the nature of his claim, given its context, dispute or otherwise implicate any rights of plaintiff or his employer under the collective bargaining agreement. Thus, despite defendants' contention to the contrary, it does not appear that resolution of this claim will necessitate reference to or depend substantially upon an analysis of the terms of that agreement, or that consideration of this tort claim is "inextricably intertwined with consideration of the terms of the labor contract." 471 U.S. at 213, 105 S.Ct. at 1912. Indeed, it is questionable whether this dispute even "concern[s] employment" or involves, even "tangentially," any provision of a collective bargaining agreement.[1] Thus, unlike *Strachan* and *Bagby*, and the myriad of cases cited *supra*, the claim here does not involve and will not require the interpretation or application of any provision of the collective bargaining agreement and is therefore not preempted.[2]

Accordingly, it is ordered that this cause is remanded to the Circuit Court of Lauderdale County, Mississippi from which it was removed.

ORDERED.

---

1. Defendants argued implicitly in their memoranda that the collective bargaining agreement governs this dispute, but did not identify, generally or specifically, any provision of the agreement to which the court would be required to refer in resolving this dispute. At a conference with the parties, counsel for defendants was asked to identify any term or terms which were contended to be pertinent to plaintiff's claim. Counsel identified the following provision:

> The right to hire; promote; discharge or discipline for cause; and to maintain discipline and efficiency of employes, is the sole responsibility of the Corporation except that Union members shall not be discriminated against as such. In addition, the products to be manufactured, the location of the plants, the schedules of production, the methods, processes and means of

manufacturing are solely and exclusively the responsibility of the Corporation.

The court has carefully considered this matter and is unable to perceive, ultimately, in what manner this provision is germane to plaintiff's claim or more than "tangentially" related to his claim.

2. If a claim is preempted by § 301, "that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law." *Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916. Given that this action originated in state court, the sole matter with which this court is concerned on the present motion is its jurisdiction, and finding that to be lacking, it must remand, though in so doing, the court would note that it has doubts as to the viability of plaintiff's claim even under state defamation law.